UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

**FOR PUBLICATION**

---------------------------------------------------------x
In re:

MESHULAM HASS,

Debtor.
---------------------------------------------------------x

Chapter 11 (Subchapter V)

Case No. 8-26-72358-spg

## MEMORANDUM DECISION AND ORDER

**Appearances:**

BFSNG LAW GROUP, LLP
*Counsel to Meshulam Hass, debtor and debtor-in-possession*
6851 Jericho Turnpike, Suite 250
Syosset, NY 11791
By: Heath S. Berger, Esq.
Mark E. Cohen, Esq.

HAROLD M. SOMER, PC
*Counsel to Jess Cohen*
1025 Old Country Road, Suite 404
Westbury, NY 11590
By: Harold M. Somer, Esq.

LAMONICA, HERBST & MANISCALCO, LLP
*Subchapter V Trustee*
3305 Jerusalem Avenue, Suite 201
Wantagh, NY 11793
By: Salvatore LaMonica, Esq.

WILLIAM K. HARRINGTON,
UNITED STATES TRUSTEE FOR REGION 2
*Office of the United States Trustee*
Alfonse M. D'Amato Federal Courthouse
560 Federal Plaza, Room 560
Central Islip, New York 11722
By: Christine H. Black, Esq.

**THE HONORABLE SHERYL P. GIUGLIANO**
**UNITED STATES BANKRUPTCY JUDGE**

## INTRODUCTION

Before the Court is the motion dated July 29, 2026 [ECF No. 30] (the "UST Motion") of William K. Harrington, the United States Trustee for Region 2, in furtherance of his duties under 28 U.S.C. § 586, by his counsel, Christine H. Black, Esq. (the "UST"), pursuant to 11 U.S.C. § 1182 and Rule 1020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking the Court's determination that Meshulam Hass (the "Debtor"), the debtor and debtor in possession in this chapter 11 case, is ineligible for relief under Subchapter V of chapter 11 of title 11, United States Code (the "Bankruptcy Code") and striking the Debtor's Subchapter V election in his bankruptcy petition (the "Petition").[1] The UST argues that the Debtor is ineligible to proceed under Subchapter V, because certain scheduled guaranties of payment with respect to three mortgages held by non-debtors, all of which are subject to pre-petition foreclosure actions, are noncontingent and liquidated, placing the Debtor beyond the jurisdictional debt limit set by 11 U.S.C. § 101(51D) as incorporated by 11 U.S.C. § 1182(1). *See* UST Mot. at 4-5.

On August 27, 2026, the Debtor filed opposition to the UST Motion [ECF No. 38] (the "Opposition") disputing the UST's characterization of those guaranties as unconditional, arguing that they are contingent on the happening of post-petition events — a reduction of the Debtor's liability upon foreclosure sales and subsequent deficiency judgments pursuant to section 1371 of the New York Real Property Actions and Proceedings Law ("N.Y. R.P.A.P.L."). *See* Opp. at 4-9.

On September 1, 2026, creditor Jess Cohen, by his attorney, filed an affirmation in support

[1] The Court finds that the UST Motion was timely pursuant to Bankruptcy Rule 1020(b) because it was filed within 30 days after the conclusion of the meeting of creditors under 11 U.S.C. § 341(a) (the meeting was not yet concluded at the time of the filing of the UST Motion), and no amendment to the Debtor's designation as a Subchapter V debtor was filed. *See* FED. R. BANKR. P. 1020(b).

of the UST Motion [ECF No. 40] (the "Affirmation"), asking the Court to take judicial notice of the amounts of certain proofs of claim filed in this chapter 11 case and arguing that cause exists to grant the UST Motion when those claims are added to the amount of Jess Cohen's judgment. *See* Aff. in Support ¶¶ 3, 5.

On September 2, 2026, the Court held a hearing (the "Hearing") to consider the relief requested in the UST Motion, took the matter under advisement, and permitted the Debtor an opportunity to respond to the issues raised one day earlier in the Affirmation.

On September 8, 2026, the Debtor filed a reply to the Affirmation [ECF No. 44] (the "Reply"), in which the Debtor conceded that he did not object to the claim of judgment by Jess Cohen,[2] but disputed that he owed any amounts to Boca Tov 18 LLC which filed a UCC-1 Financing Statement. *See* Reply ¶¶ 2-3.

The Court finds that for the reasons set forth below, the Debtor's noncontingent and liquidated liabilities place the Debtor beyond the aggregate debt limit set forth in 11 U.S.C. § 101(51D) as incorporated by 11 U.S.C. § 1182(1). As a result, the Court holds that the Debtor is ineligible to proceed under Subchapter V. The Court grants the UST Motion and strikes the Debtor's Subchapter V election made in the Petition. The Debtor's case will continue as a standard chapter 11 case in accordance with this Memorandum Decision and Order.

## **JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the Standing Order of Reference of the United States District Court for the Eastern District of New York, dated August 28, 1986 (Weinstein, C.J.), as amended by Order dated December 5, 2012

[2] The Affirmation states that Jess Cohen holds a judgment in the amount of $1,770,000.00 as of the Petition Date. *See* Aff. in Support ¶ 3. The Reply states that $151,797.64 of Jess Cohen's judgment should be bifurcated and treated as secured, with the balance treated as unsecured, but did not contest the validity or amount, nor does the Reply state Jess Cohen's judgment is contingent or unliquidated. *See* Reply ¶ 2.

(Amon, C.J.) entered in accordance with 28 U.S.C. § 157(a).

## BACKGROUND

### I. The Debtor's Bankruptcy Schedules

On June 10, 2026 (the "Petition Date"), the Debtor filed the Petition in which he elected to proceed as a Subchapter V debtor.[3] *See* Pet. [ECF No. 1]. On June 16, 2026, the Debtor filed an amended Schedule A/B, and on June 18, 2026, the Debtor filed his Statement of Financial Affairs. *See* Am. Schedule A/B [ECF No. 15]; Stmt. of Fin. Affairs [ECF No. 20]. The Debtor's Schedule D, filed under penalty of perjury, lists secured claims (the "Secured Claims") totaling $2,387,526.38, of which $2,187,526.38 is noncontingent and liquidated. *See* Schedule D [ECF No. 1]. The Secured Claims with an amount listed include the following: (1) a claim arising from a judgment lien held by creditor Jess Cohen in the amount of $1.5 million, *not* marked as contingent, unliquidated, or disputed, secured by the Debtor's real property located at 100 Meadowview Avenue, Hewlett, NY 11557 (the "Hewlett Property")[4]; (2) a mortgage held by NewRez d/b/a Shellpoint Mortgage Servicing ("NewRez") in the amount of $687,526.38, *not* marked as contingent, unliquidated, or disputed, also secured by the Hewlett Property; and (3) a claim held by Sivan Sudai [*sic*][5] marked as unliquidated but *not* contingent or disputed in the amount of $200,000.00 relating to a "[t]emporary attachment order dated 01-06-2026."[6] *Id.*

---

[3] The Debtor previously filed for bankruptcy under chapter 7 of the Bankruptcy Code on November 5, 2025, and that case was voluntarily dismissed for cause pursuant to 11 U.S.C. § 707(a) on March 16, 2026. *See In re Meshulam Hass*, Case No. 8-25-74283-spg.

[4] On June 10, 2024, a Judgment by Confession was recorded in favor of Jess Cohen in the Clerk's Office for Nassau County, New York. *See* Aff. in Support, Ex. A.

[5] The name of this creditor was misspelled and should read as "Sivan Sodayee."

[6] On September 15, 2026, Sivan Sodayee ("Soyadee") filed a proof of claim in this chapter 11 case in the amount of $355,119.07 (of which $200,000.00 was claimed as secured). On October 21, 2026, Sodayee filed a *Notice of Entry of Israeli Judgment and Supplemental Development Regarding ECF No. 39*, asserting that an Israeli court entered a judgment against the Debtor in a pending litigation in Israel, allegedly

The Secured Claims also list claims with "unknown" amounts, as follows: (1) FM Home Loans LLC ("FM Home Loans") *not* marked as contingent, unliquidated, or disputed, secured by "100% of [D]ebtor's membership interest in 88 Marion Street LLC"; and (2) Toorak Capital Partners LLC ("Toorak Capital") *not* marked as contingent, unliquidated, or disputed, secured by "100% of Debtor's membership interest in 26 Goodwin Place LLC." *Id.*

The Debtor's Schedule E/F, filed under penalty of perjury, lists general unsecured claims totaling $318,982.57 (the "Unsecured Claims").[7] *See* Schedule E/F [ECF No. 1]. All general unsecured claims with known values are *not* marked as contingent, unliquidated, or disputed. *See id.* The Unsecured Claims also include certain claims listed with "unknown" amounts: (1) two claims held by Toorak Capital, marked as contingent and unliquidated, relating to a "[p]ersonal guaranty on building mortgage and associated note" incurred in March and July 2021; and (2) a claim held by Wilmington Savings Fund Society FSB ("Wilmington"), marked as unliquidated but *not* contingent or disputed, relating to a "[p]ersonal guaranty on Mortgage Note by MHDN Management LLC, as mortgagor of the real property [located at] 1042 Washington Avenue, Bronx, NY."[8] *Id.* Thus, while the Debtor lists noncontingent and liquidated unsecured claims totaling

---

involving this claim, in the amount of NIS 1,192,193.65 (approximately USD $383,835.69) plus post-judgment additions. [ECF No. 58]. The Court declines to consider Sodayee's claim in its determination of the Debtor's Subchapter V eligibility, because there is a question as to whether it was liquidated as of the Petition Date. The Debtor scheduled Sodayee's claim as unliquidated but she asserted in the addendum to her proof of claim that "the contractual repayment component is ascertainable by computation from the written agreements." Sodayee Proof of Claim 6-1. *See In re Stebbins*, No. 8-14-73357-las, 2015 WL 792095, at *6 (Bankr. E.D.N.Y. Feb. 24, 2015), *aff'd*, *Stebbins v. Artificial Horizon, Ltd.*, No 15-CV-1196 (JFB), 2016 WL 1069077, *7 (E.D.N.Y. March 17, 2016) (citation omitted) (finding liabilities to be liquidated if the debts are readily ascertainable by reference to the underlying contracts and simple mathematical computation).

[7] The Debtor did not list any priority unsecured claims in his Schedule E/F. *See* Schedule E/F [ECF No. 1].

[8] The other unsecured claims with "unknown" amounts are: (1) a claim held by Aviram Dweck Advocate LLC marked as unliquidated but *not* contingent or disputed; (2) a claim held by Board of Managers of the 11A Somers marked as contingent, unliquidated, and disputed; (3) a claim held by Ed Brook LLC *not*

$318,982.57, there were also three unsecured claims in allegedly unknown amounts marked as unliquidated and/or contingent, which arose under personal guaranties made by the Debtor on loans made to non-debtor entities in which Debtor had a membership interest.

## II. The Guaranties

### A. The Debtor's Guaranty of Loans Made to 88 Marion Street LLC

On or about March 22, 2021, the Debtor executed a guaranty in favor of FM Home Loans for two loans in the principal amounts of $2.49 million and $625,000.00 made to 88 Marion Street LLC[9] ("Marion Guaranty"). *See* UST Mot., Ex. B. FM Home Loans subsequently assigned these loans to Toorak Capital, and the Marion Guaranty provided that its provisions would inure to the benefit of any successors and assigns of the lender. *See id.* at 15 n.3.; *id.*, Ex. B, Guaranty ¶ 6. On September 16, 2022, Toorak Capital commenced a mortgage foreclosure action in New York State Supreme Court, County of Kings, Index No. 527188/2022, against certain defendants including 88 Marion Street LLC and the Debtor. *See id.* ¶ 28; *id.*, Ex. A, C. On July 25, 2023, prior to the Petition Date, a judgement of foreclosure and sale was entered in favor of Toorak Capital in the amount of $3,844,145.60 plus interest and counsel fees. *See id.* ¶ 30; *id.*, Ex. C.

### B. The Debtor's Guaranty of a Loan Made to 26 Goodwin Place LLC

On or about July 13, 2021, the Debtor executed a guaranty in favor of FM Home Loans for a loan in the principal amount of $2.625 million made to 26 Goodwin Place LLC[10] (the "Goodwin Guaranty" and, together with the Marion Guaranty, the "Marion and Goodwin Guaranties"). *See*

---

marked as contingent, unliquidated, or disputed; and (4) a claim held by Esther Steiner Yeshurun marked as unliquidated but *not* contingent or disputed. *See* Schedule E/F [ECF No. 1].

[9] According to amended Schedule A/B, the Debtor holds a 51% ownership interest in 88 Marion Street LLC. *See* Am. Schedule A/B [ECF No. 15].

[10] According to amended Schedule A/B, the Debtor owns 100% of the interests in 26 Goodwin Place LLC. *See* Am. Schedule A/B [ECF No. 15].

*id.*, Ex. E. FM Home Loans subsequently assigned the loan to Toorak Capital, and the Goodwin Guaranty provided that its provisions would inure to the benefit of any successors and assigns of the lender. *See id.*, Ex. D; *id.*, Ex. E, Guaranty ¶ 6. On November 22, 2022, Toorak Capital commenced a mortgage foreclosure action in New York State Supreme Court, County of Kings, Index No. 534120/2022, against certain defendants including 26 Goodwin Place LLC and the Debtor. *See id.* ¶ 31; *id.*, Ex. D, F. On March 18, 2024, a judgment of foreclosure and sale was entered in favor of Toorak Capital in the amount of $3,588,263.52 plus interest and counsel fees. *See id.* ¶ 32; *id.*, Ex. F.

**C. Relevant Provisions of the Marion and Goodwin Guaranties**

The Marion and Goodwin Guaranties contain the following provisions:

- Paragraph 2: "Guaranty Clause. The Guarantor hereby **absolutely, irrevocably and unconditionally guaranties to Lender the full, prompt and unconditional payment** of the Debt, when and as the same shall become due . . . ." *Id.*, Ex. B, E, Guaranty ¶ 2 (emphasis added).

- Paragraph 2(d): "This Guaranty is an **absolute, continuing, unconditional and unlimited guaranty of payment and not merely of collection** and Lender shall be entitled to **payment from the undersigned without first commencing any action against Borrower or resorting to any security** or to any credit on the books of Lender in favor of Borrower . . . ." *Id.*, Ex. B, E, Guaranty ¶ 2(d) (emphasis added).

- Paragraph 4: "Guarantor Waivers. The **undersigned hereby waives and agrees not to assert or take advantage of any defense** based upon: . . . (g) **The failure of Lender to commence an action against Borrower and/or Guarantor or to proceed against or exhaust any security held by Lender at any time, or to pursue any other remedy whatsoever at any time;** . . . (o) **An election of remedies by Lender, including any election to proceed against any collateral by judicial or nonjudicial foreclosure, whether real property or personal property, or by deed in lieu thereof**, and whether or not every aspect of any foreclosure sale is commercially reasonable, and whether or not any such election of remedies destroys or otherwise impairs the subrogation rights of the undersigned or the rights of the undersigned to proceed against Borrower or any guarantor by way of subrogation or for reimbursement or contribution, or all such rights; . . . THIS IS AN UNCONDITIONAL AND IRREVOCABLE WAIVER OF ANY RIGHTS AND DEFENSES THE UNDERSIGNED MAY HAVE BECAUSE BORROWER'S DEBT IS SECURED BY INTERESTS IN REAL PROPERTY." *Id.*, Ex. B, E, Guaranty ¶ 4 (emphasis added).

- Paragraph 5: "Collection and Enforcement. (a) LENDER MAY COLLECT FROM THE UNDERSIGNED WITHOUT FIRST FORECLOSING ON ANY REAL OR PERSONAL PROPERTY COLLATERAL PLEDGED BY BORROWER; AND (b) IF LENDER FORECLOSES ON ANY REAL PROPERTY COLLATERAL PLEDGED BY BORROWER: i. THE AMOUNT OF THE DEBT MAY BE REDUCED ONLY BY THE PRICE FOR WHICH THAT COLLATERAL IS SOLD AT A FORECLOSURE SALE, EVEN IF THE COLLATERAL IS WORTH MORE THAN THE SALE PRICE; AND ii. LENDER MAY COLLECT FROM THE UNDERSIGNED EVEN IF LENDER, BY FORECLOSING ON THE REAL PROPERTY COLLATERAL, HAS DESTROYED ANY RIGHT THE UNDERSIGNED MAY HAVE TO COLLECT FROM BORROWER. *Id.*, Ex. B, E, Guaranty ¶ 5.

**D. The Debtor's Guaranty of a Loan Made to MHDN Management LLC**

On February 27, 2020, the Debtor executed a guaranty in favor of FM Home Loans for a consolidated loan in the principal amount of $997,500.00 made to MHDN Management LLC[11] (the "MHDN Guaranty" and, together with the Marion and Goodwin Guaranties, the "Guaranties"). *See id.*, Ex. H. FM Home Loans subsequently assigned this loan to Wilmington, and the guaranty provided that its provisions would continue to the benefit of any successors and assigns of the lender. *See* Wilmington Proof of Claim 3-1 at 96; UST Mot., Ex. H, Guaranty ¶ 16. Wilmington commenced a mortgage foreclosure action on May 26, 2023, in the New York State Supreme Court, County of Bronx, Index No. 808266/2023E, against certain defendants including the Debtor and MHDN Management LLC, which was stayed by the Debtor's prior chapter 7 bankruptcy case filed November 5, 2025. UST Mot. ¶ 33; *id.*, Ex. G.

**E. Relevant Provisions of the MHDN Guaranty**

The MHDN Guaranty contains the following provisions:

- Paragraph 1: "Guarantor hereby **irrevocably, unconditional** [*sic*] **and absolutely guarantees to Lender and becomes surety for (a) the prompt payment** of the principal sum due to Lender from Borrower under the Note at any time and from time to time, together with all interest thereon, (b) the prompt payment of all other sums due to Lender

[11] According to amended Schedule A/B, the Debtor holds a 100% ownership interest in MHDN Management LLC. *See* Am. Schedule A/B [ECF No. 15].

under the terms of the Note and the other Loan Documents . . . ." *Id.*, Ex. H, Guaranty ¶ 1 (emphasis added).

- Paragraph 2: "This Agreement is **an irrevocable, absolute, continuing guaranty of payment and performance and not a guaranty of collection** . . . ." *Id.*, Ex. H, Guaranty ¶ 2 (emphasis added).

- Paragraph 6: "Until all of the Guaranteed Obligations are completely fulfilled to the satisfaction of Lender and each and every one of the terms, covenants, and conditions of this Agreement are fully performed, **the liability of Guarantor under this Agreement shall in no way be released or affected by:** . . . (d) **the commencement, existence or completion of any proceeding against Borrower or otherwise related to the collection and enforcement of the Guaranteed Obligations**, or (e) **reason of any action taken or omitted or circumstance which might vary the risk or affect the rights or remedies of Guarantor with respect to the Guaranteed Obligations** or this Agreement. **Guarantor hereby expressly waives and surrenders any defenses to its liability hereunder based upon any of the foregoing acts, omissions, agreements, or waivers of Lender, it being the purpose and intent of the parties hereto that the obligations of Guarantor hereunder are absolute and unconditional**." *Id.*, Ex. H, Guaranty ¶ 6 (emphasis added).

- Paragraph 11: "Except as otherwise provided in this Agreement or in any of the other Loan Documents, **Guarantor hereby consents and agrees to each of the following and agrees that Guarantor's obligations under this Agreement shall not be released, diminished, impaired, reduced or adversely affected by any suretyship defense and/or any of the following and waives any and all common law, equitable, statutory, or other rights** . . . which Guarantor might otherwise have as a result of or in connection with any of the following: . . . (c) **the commencement or prosecution of any enforcement, proceeding, including any proceeding in any court against Borrower or any other person or entity with respect to any obligations arising out of the Loan Documents;** (d) **any right to require Lender to proceed against any other person or to proceed against or exhaust any security held by Lender at any time or to pursue any other remedy in Lender's power or under any other agreement before proceeding against Guarantor** hereunder . . . ." *Id.*, Ex. H, Guaranty ¶ 11 (emphasis added).

## III. Proofs of Claim Filed in the Debtor's Chapter 11 Case

As of November 5, 2026, there were six proofs of claim filed in this chapter 11 case in the total amount of $2,780,879.94, including four (4) proofs of claim in the aggregate amount of $2,425,760.87 filed by: (1) Capital One, N.A. in the amount of $296.00; (2) the Internal Revenue Service in the amount of $365,000.00; (3) Wilmington in the amount of $1,367,137.51 based on a

consolidated promissory note and mortgage, secured by real property located at 1042 Washington Avenue, Bronx, NY 10456; *See* Wilmington Proof of Claim 3-1 at 23-30, 60-80;[12] and (4) NewRez in the amount of $693,327.36.[13]

## DISCUSSION

### I. Eligibility Requirements for Subchapter V Under 11 U.S.C. § 1182

Pursuant to 11 U.S.C § 1182, a debtor must be "a small business debtor" as defined by 11 U.S.C. § 101(51D) in order to be eligible for Subchapter V. *See* 11 U.S.C. §§ 1182(1) and 101(51D); *see also In re 25 My RentCo LLC*, 679 B.R. 474, 481 (Bankr. S.D.N.Y. 2026) ("To be eligible for Subchapter V, a debtor must qualify as a 'small business debtor' under the code."). A "small business debtor" is defined in 11 U.S.C. § 101(51D) as "a person engaged in commercial or business activities . . . that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition . . . in an amount not more than $3,424,000 . . . not less than 50 percent of which arose from the commercial or business activities of the debtor." 11 U.S.C. § 101(51D). Thus, to be eligible to proceed under Subchapter V, a debtor's aggregate noncontingent and liquidated secured and unsecured debts[14] as of the petition date cannot exceed

[12] This Proof of Claim filed by Wilmington evidences the same debt as the MHDN Guaranty made by the Debtor and included by the Debtor in the Unsecured Claims due to Wilmington as unliquidated, but not contingent or disputed, debt.

[13] The remaining two proofs of claim are not considered by the Court in determining the Debtor's eligibility for Subchapter V and were filed by: (1) Esther Steiner Yeshurun in the amount of $0.00; and (2) Sivan Sodayee in the amount of $355,119.07. The Court is not considering Sivan Sodayee's claim because there is a question as to whether her claim was liquidated as of the Petition Date — the Debtor scheduled her claim as unliquidated but Sivan Sodayee asserted in the addendum to her proof of claim that "the contractual repayment component is ascertainable by computation from the written agreements." Sodayee Proof of Claim 6-1; *Stebbins*, 2015 WL 792095, at *6 (citation omitted) (finding liabilities to be liquidated if the debts are readily ascertainable by reference to the underlying contracts and simple mathematical computation).

[14] Pursuant to 11 U.S.C. § 101(12), the term "debt" is defined as a "liability on a claim." 11 U.S.C. § 101(12). Pursuant to 11 U.S.C. § 101(5), the definition of a "claim" includes the "right to payment, whether

$3,424,000. *See In re Molina*, 678 B.R. 243, 251 (Bankr. M.D. Fla. 2026) (sustaining creditor's objection to a debtor's Subchapter V election because the state court judgment exceeded the debt limit for Subchapter V eligibility).

## II. The Debtor Has the Burden of Proof to Establish Subchapter V Eligibility

"The Bankruptcy Code and Bankruptcy Rules do not address who carries the burden of proof on a debtor's Subchapter V eligibility when an objection is filed." *In re Carter*, No. 23-54816-JWC, 2023 WL 9103614, at *2 (Bankr. N.D. Ga. Dec. 13, 2023) (citation omitted). "In the Second Circuit, courts have adopted the 'majority position' that the debtor has the burden of proof to show that it is eligible to proceed under Subchapter V." *My RentCo*, 679 B.R. at 483 (citations omitted). "[I]f the debtor's election to proceed under Subchapter V is challenged, the debtor bears the burden to show that it is, in fact, eligible to proceed in that way." *In re Fama*, 655 B.R. 648, 658 (Bankr. E.D.N.Y. 2023). "This is consistent with the rule that courts apply in connection with eligibility to proceed under other chapters." *Id.* (citation omitted).

For the purposes of the UST Motion, the Court adopts the majority position and finds that the Debtor has the burden of proof to show by a preponderance of the evidence that it is eligible to proceed under Subchapter V.[15] *See In re McKenzie Contracting, LLC*, No. 8:24-bk-01255-RCT, 2024 WL 3508375, at *1 (Bankr. M.D. Fla. July 19, 2024) ("[A] significant majority of courts conclude that the debtor bears the burden of proof for Subchapter V eligibility by a preponderance of the evidence.").

---

or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5).

[15] The Court notes that even if the UST had the burden of proof to show that the Debtor is ineligible to proceed under Subchapter V, the UST would have carried its burden to do so based on all the findings of fact and conclusions of law of this Court.

## III. A Debtor's Schedules Are Not Necessarily Determinative of Subchapter V Eligibility

"While the [debtor's] schedules offer some probative value, the Court will not restrict its inquiry solely to the schedules." *In re Hall*, 650 B.R. 595, 600 (Bankr. M.D. Fla. 2023) (citation omitted) (considering guaranty signed by the debtors when determining Subchapter V eligibility). The Court can "review the record and make an independent determination as to whether the claims at issue have been scheduled in good faith and whether the claims were properly characterized by the debtor as contingent or unliquidated as of the date of filing." *In re McPhillips Flying Service, Inc.*, No. BT 25-02011, 2025 WL 3030284, at *8 (Bankr. W.D. Mich. Oct. 29, 2025) (citation omitted). Moreover, the Court "may look both to the debtor's schedules and to creditors' proofs of claim." *In re Zhang Medical P.C.*, 655 B.R. 403, 409 (Bankr. S.D.N.Y. 2023) (citations omitted) (noting that proofs of claim are *prima facie* valid); *McKenzie Contracting*, 2024 WL 3508375, at *6 (assessing creditors' proofs of claim when determining a debtor's noncontingent and liquidated debt for Subchapter V eligibility purposes).

Here, the Court looks beyond the Debtor's Schedules and reviews the applicable record of this case, including the Guaranties, in determining the Debtor's Subchapter V eligibility.

## IV. Consideration of the Filed Proofs of Claim Points to the Debtor's Ineligibility Under Subchapter V

The Court may look to filed proofs of claim when assessing a debtor's eligibility for Subchapter V. *See Zhang Medical*, 655 B.R. at 409; *McKenzie Contracting*, 2024 WL 3508375, at *6. As of November 5, 2026, four (4) of the six (6) filed proofs of claim total $2,425,760.87, not including the undisputed $1.5 million[16] secured claim held by judgment creditor Jess Cohen. *See* Schedule D [ECF No. 1]; Reply ¶ 2. Jess Cohen's claim, together with the four (4) filed proofs

[16] The $1.5 million claim amount noted here does not reflect any potential post-judgement interest.

of claim listed above, places the Debtor beyond the Subchapter V debt limit. *See In re Carter*, 2023 WL 9103614, at *9 (finding that the proof of claim of the IRS and certain scheduled debts exceeded the Subchapter V debt limit). The Reply argues that Jess Cohen's claim will be bifurcated into secured and unsecured claims, but Subchapter V eligibility is based on the *aggregate* secured and unsecured debt amount. *See* Reply ¶ 2; 11 U.S.C. § 101(51D) (including "aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition").

The Debtor also raises issues with Wilmington's proof of claim. *See* Opp. ¶ 31. Wilmington's proof of claim asserts a secured claim in the amount of $1,367,137.51, but the Debtor's liability to Wilmington arises from his guarantee of the consolidated loan in the principal amount of $997,500.00 made to MDHN Management LLC. *See* UST Mot., Ex. H. The Debtor schedules this liability as an unliquidated unsecured claim in Schedule E/F, and asserts in the Opposition that "Wilmington's claim, which although filed as a secured claim, is not secured by any asset of Debtor." *See* Schedule E/F [ECF No. 1]; Opp. ¶ 31. The Debtor also notes in the Opposition that Wilmington did not attach the MDHN Guaranty to its proof of claim and stated that it was Debtor's intention to object to or otherwise challenge this claim. *See* Opp. ¶ 31.

The Debtor's arguments are unavailing. Subchapter V eligibility is based on *aggregate* debt (secured and unsecured), and any possible re-classification of Wilmington's claim would not remove it from debt limit calculations. Nevertheless, out of an abundance of caution, the Court also considers below the Guaranties in making its determination that the Debtor is not eligible to proceed under Subchapter V.

## V. Case Precedent Concerning Chapter 13 Debtor Eligibility is Instructive for Subchapter V Eligibility Determinations

When considering Subchapter V debtor eligibility requirements under 11 U.S.C § 1182(1), courts have considered the analogous "noncontingent" and "liquidated" secured and unsecured

debt limits that determine chapter 13 debtor eligibility under 11 U.S.C. § 109(e). *See Zhang Medical*, 655 B.R. at 408 (citing *Mazzeo v. United States (In re Mazzeo)*, 131 F.3d 295 (2d Cir. 1997)) (analyzing Second Circuit case precedent that considered the meaning of "noncontingent" and "liquidated" debt in a chapter 13 eligibility case); *In re Articon Hotel Services LLC*, 676 B.R. 184, 189 (Bankr. N.D. Ill. 2025) (citing *Matter of Knight*, 55 F.3d 231 (7th Cir. 1995) (finding that courts including the Seventh Circuit have considered chapter 13 precedent in determining Subchapter V eligibility)); *Hall*, 650 B.R. at 598 ("Given the similar language in § 109(e), Chapter 13 case law offers useful guidance when interpreting § 1182.").

**A. An Unconditional Guaranty of Payment is Noncontingent as of the Petition Date Where There Was a Pre-Petition Default of the Principal Obligor, Irrespective of the Lender's Election of Remedies or any Deficiency Judgment**

Judge Scarcella's holding in *In re Stebbins*, a chapter 13 case, affirmed by the U.S. District Court for the Eastern District of New York, is instructive in this chapter 11 case. *See In re Stebbins*, No. 8-14-73357-las, 2015 WL 792095 (Bankr. E.D.N.Y. Feb. 24, 2015), *aff'd*, *Stebbins v. Artificial Horizon, Ltd.*, No 15-CV-1196 (JFB), 2016 WL 1069077 (E.D.N.Y. March 17, 2016). In *Stebbins,* Judge Scarcella rejected a chapter 13 debtor's argument that his guaranty liability remained contingent until all the elements of N.Y. R.P.A.P.L. § 1371 in a foreclosure action were "completed and a deficiency judgment [was] entered fixing the amount due and owing." *Id.* at *4. Judge Scarcella held that with respect to an unconditional guaranty of payment, if the "triggering event that gives rise to the liability in question occurs pre-petition, the debt is no longer contingent; rather it is noncontingent as of the petition date." *Id.* (quoting *Mazzeo* 131 F.3d at 303). Moreover, Judge Scarcella held that the liability triggered pre-petition does not need to be reduced to judgment to render it noncontingent. *See id.* "[T]he concept of contingency involves the nature or origin of liability," or more precisely, "the time or circumstances under which the liability arises."

*Id.* (quoting *Mazzeo* 131 F.3d at 303). Thus, liability "does not mean the same as judgement or remedy, but only a condition of being obligated to answer for a claim." *Id.* (quoting *Mazzeo* 131 F.3d at 303).

The triggering event in *Stebbins* was the pre-petition default of the principal obligor on the loan guaranteed by the debtor, and because the guaranty was an unconditional guaranty of payment with a waiver of any duty by the lender to elect a certain remedy, the debtor became liable for the entire indebtedness immediately upon the principal obligor's default. *See id.* at *5 (citation omitted) ("[T]he combination of a guaranty of payment and a clause in the agreement waiving the creditor's duty to first move against the primary obligor's assets rendered the guarantor liable for the full amount of the debt immediately upon the default of the primary obligor."). In addition, the fact that a debtor's liability may be reduced by application of the collateral to the indebtedness does not render the guaranty obligation contingent. *See id.* (citation omitted) ("Notwithstanding the fact that the creditor may at some time in the future decide to release the guarantor from some or all of the debt by applying the collateral does not alter the fact that as of the date of the filing, the debtor was liable for the full amount of the claim without regard to the collateral.").

The District Court affirmed Judge Scarcella's decision in *Stebbins*, holding the "Bankruptcy Court correctly concluded [that the debtor's] obligation became noncontingent at the time of default, before the foreclosure action was even commenced, and thus, is not contingent on a judgment or remedy in the foreclosure action." *Stebbins v. Artificial Horizons*, 2015 WL 792095, at *5 (citing *In re Wilson*, 9 B.R. 723, 725 (Bankr. E.D.N.Y.1981)) (affirming "the rulings of the Bankruptcy Court in all respects"). The District Court held that N.Y. R.P.A.P.L. § 1301(3), known as the "election of remedies" rule, had "no force" when the guaranty became noncontingent at the time of default. *See id.*

### B. An Unconditional Guarantee of Payment is Liquidated as of the Petition Date if the Amount of the Debt is Readily Ascertainable Irrespective of Whether a Lender Has Obtained a Deficiency Judgment Fixing the Debt

In *Stebbins*, Judge Scarcella also addressed the issue of whether a lender's election under N.Y. R.A.P.L § 1301(3) to foreclose on the collateral and need to obtain a deficiency judgement under N.Y. R.A.P.L § 1371(1) to fix the debt amount, rendered a guarantor's liability unliquidated in a pending bankruptcy case.[17] *In re Stebbins*, 2015 WL 792095, at *6. "A debt is 'liquidated' where the claim can be readily determined by reference to an agreement or simple mathematical computation. *Id.* (citing *In re Mazzeo,* 131 F.3d at 304). In *Stebbins*, the debtor's liability under the guarantee was triggered upon the principal obligor's default, and "[f]rom that point in time, [the debtor] owed the full amount of the outstanding indebtedness." *Id.* at *7. Thus, the "amount of the liability was readily ascertainable at any time based upon the written contracts, i.e., the note and the [g]uaranty, and by resort to the [j]udgment . . . ." *Id.* In *Stebbins,* the commencement of a foreclosure action did not alter the liquidated nature of the debt, and on appeal the District Court held that the possibility of the debtor disputing the amount of the debt following a deficiency judgment in the foreclosure action did not automatically render the debt contingent or unliquidated. *See id.* ("The commencement of the [f]oreclosure [a]ction did not change the characterization of the debt."); *Stebbins v. Artificial Horizons*, 2015 WL 792095, at *6 (citing *In re Mazzeo* 131 F.3d. at 304) ("The amount due (the full amount of the outstanding indebtedness) was readily ascertainable from the point in time that [the principal obligor's] default triggered [the debtor's]

---

[17] The Debtor argues that *Stebbins* was contrary to the statutory intent of N.Y. R.P.A.P.L. § 1371, and that consideration of the Debtor's liabilities for Subchapter V eligibility in this case should be based on creditors' "true" claims following an award of a deficiency judgment pursuant N.Y. R.P.A.P.L. § 1371, whereby the creditors' claims have been reduced by application of the secured properties at their fair market value. *See* Opp. ¶¶ 24-30. This Court finds no reason to revisit the decision in *Stebbins*, which was affirmed by the District Court, and continues to find its reasoning compelling, particularly in this case involving an unconditional guaranty of payment triggered pre-petition, rendering N.Y. R.P.A.P.L. §§ 1301 and 1371 of no force. *See Stebbins v. Artificial Horizons*, 2015 WL 792095, at *5.

liability. Though [the debtor] may dispute the amount he will ultimately have to pay [the lender] following a deficiency judgment in the foreclosure action, this does not automatically render the debt either contingent or unliquidated.").

## VI. The Debtor's Guaranties are Noncontingent Liabilities

The Court finds that the Guaranties are unconditional guaranties of payment and not of collection and, therefore, are noncontingent liabilities to be included in the determination of the Debtor's eligibility (or lack thereof) for Subchapter V.

The Marion and Goodwin Guaranties expressly provide that: (1) "The **Guarantor absolutely, irrevocably and unconditionally guaranties to Lender the full, prompt and unconditional payment of the Debt**"; and (2) "This Guaranty is an **absolute, continuing, unconditional and unlimited guaranty of payment and not merely of collection."** *See* UST Mot., Ex. B, E, Guaranty ¶¶ 2, 2(d) (emphasis added); *see also In re South Side House, LLC*, 470 B.R. 659, 675 (Bankr. E.D.N.Y. 2012) (citations omitted) ("The parties' intention, as expressed in the text of the agreement, determines whether or not the guaranty is absolute or conditional.").

The Debtor disagrees with the UST's characterization of the Marion and Goodwin Guaranties as unconditional guaranties of payment similar to the guaranty under consideration in *Stebbins. See* Opp. at ¶¶ 11-12. The Debtor argues that the Marion and Goodwin Guaranties are distinguishable because paragraph 5 allows for an election of remedies by the lender and reduction of the Debtor's indebtedness by application of the collateral if the lender elects to proceed by a foreclosure action. Opp. at ¶¶ 11-12, 15-16. But the Debtor ignores paragraph 2 (focusing only on paragraph 5), which unequivocally states that the Marion and Goodwin Guaranties are an unconditional guaranty of payment and not merely of collection. Furthermore, the unconditional payment language in the Marion and Goodwin Guaranties mirrors that in the guaranty under

consideration in *Stebbins*, which provided: "This is an **absolute, unconditional and continuing guaranty of payment** of the Indebtedness"; and "**The liability of the Undersigned shall not be affected or impaired by . . . foreclosure or enforcement of any collateral security**." *In re Stebbins*, 2015 WL 792095, at *5 (emphasis added).

The Debtor also mischaracterizes as mandatory the reduction of the Debtor's indebtedness by an application of the collateral in a foreclosure sale, whereas the language of paragraph of 5 of the Marion and Goodwin Guaranties frames the reduction of the Debtor's indebtedness as a cap: "IF LENDER FORECLOSES ON ANY REAL PROPERTY COLLATERAL PLEDGED BY BORROWER: i. THE AMOUNT OF THE DEBT **MAY BE REDUCED ONLY BY THE PRICE FOR WHICH THAT COLLATERAL IS SOLD AT A FORECLOSURE SALE EVEN IF THE COLLATERAL IS WORTH MORE THAN THE SALE PRICE**." UST Mot., Ex. B, E, Guaranty ¶ 5 (emphasis added); Opp. ¶ 14-15 ("[I]f [the lender] did foreclose, then in that event, the amount of, collection and enforcement of the guaranty debt would be reduced by the price which Toorak would obtain by the sale of the pledged collateral."); Sept. 2, 2026 Hr'g Tr. at 7:25-8:5 ("But if you look at the quoted information that appears on page 5 of the debtor's opposition, it says the amount of the debt may be reduced only by the price. But it doesn't mean that the amount of the debt is reduced by the price or that a sale is required."). Furthermore, the Debtor ignores paragraph 4 of the Marion and Goodwin Guaranties, which expressly provides that the guarantor waives any defense based on an election of remedies by the lender. *See id.*, Ex. B, E, Guaranty ¶ 4; Sept. 2, 2026 Hr'g Tr. at 6:19-7:10.

The plain language of the MHDN Guaranty also confirms that it is an unconditional guaranty of payment and not of collection. Paragraph 1 provides: "Guarantor hereby **irrevocably, unconditional** [*sic*] **and absolutely guarantees to Lender and becomes surety for . . . the**

**prompt payment** of the principal sum"; and Paragraph 2 provides that "This Agreement is **an irrevocable, absolute, continuing guaranty of payment and performance and not a guaranty of collection**." *See id.*, Ex. H, Guaranty ¶¶ 1-2 (emphasis added). Paragraphs 6 and 11 of the MHDN Guaranty provide that the guarantor waives any defenses based on any proceeding (or lack thereof) to enforce the guaranteed obligations. *See id.*, Ex. H, Guaranty ¶¶ 6, 11.

It is undisputed that the non-debtor principal obligors defaulted pre-petition on the three loans connected to the Guaranties, resulting in foreclosure actions commenced pre-petition by the secured lenders. *See In re Stebbins*, 2015 WL 792095, at *4. The event triggering liability under the Guaranties occurred pre-petition, rendering the Guaranties—as unconditional guaranties of payment—noncontingent. *See id.* Following *Stebbins*, N.Y. R.P.A.P.L. §§ 1301(3) and 1371(1) did not render the Guaranties noncontingent because the guaranty obligations became noncontingent immediately upon the default of the principal obligor. *See id.*; *Stebbins v. Artificial Horizons*, 2015 WL 792095, at *5. Based on the foregoing, the Court finds that the Debtor's liabilities under the Guaranties are noncontingent.

## VII. The Debtor's Guaranties are Liquidated Liabilities

The Court finds that the liabilities arising from the Guaranties are liquidated, because the debts are readily ascertainable by reference to the underlying contracts and simple mathematical computation. *See Stebbins*, 2015 WL 792095, at *6 (citing *In re Mazzeo,* 131 F.3d at 304).

As discussed above, the liabilities under the Guaranties were triggered upon the principal obligors' pre-petition default, and from that point in time, the Debtor as guarantor owed the full amount of indebtedness. *See id.* at *7. With respect to the Marion and Goodwin Guaranties, the amount of liability is readily ascertainable based upon the written contracts—*i.e.*, the notes and guaranties—and by reference to the judgments of foreclosure and sale entered by the state court in

the foreclosure actions. *Id.* With respect to the MHDN Guaranty, the amount of liability is readily ascertainable from the note and guaranty, despite a judgment not having been entered yet in the underlying foreclosure action. *See Articon Hotel*, 676 B.R. at 189 (distinguishing "liquidated" debt from debt "subject to finality in court"); *Hall*, 650 B.R. at 599 ("Ordinarily, debts of a contractual nature are 'subject to ready determination and precision in computation of the amount due' and, therefore, are considered liquidated, even if subject to a substantial dispute."). The liability arising from the MHDN Guaranty is tied to the underlying consolidated note and mortgage and, therefore, the debt amount is readily ascertainable from the written contracts and simple mathematical computation.

Any possibility of an election of remedies or need to fix the debt based on a deficiency judgment does not alter the finding that the Guaranties represent liquidated liabilities. Following *Stebbins*, a lender's election under N.Y. R.A.P.L § 1301(3) to foreclose on the collateral and need to obtain to a deficiency judgement under N.Y. R.A.P.L § 1371(1) to fix the debt amount does not render a guarantor's liability unliquidated. *See Stebbins*, 2015 WL 792095, at *6; *Stebbins v. Artificial Horizons*, 2015 WL 792095, at *6 (citing *In re Mazzeo* 131 F.3d. at 304).

The liabilities under the Guaranties are liquidated debts, and as set forth above are noncontingent debts, and, therefore, subject to the debt limit imposed by 11 U.S.C. § 101(51D) as incorporated by 11 U.S.C. § 1182(1).

## VIII. The Debtor's Aggregate Noncontingent Liquidated Secured and Unsecured Debts Exceed the Limit Set by the Bankruptcy Code for Subchapter V

The Court finds that the total value of the Debtor's noncontingent and liquidated debts, including those under the Guaranties, exceeds the debt limit for Subchapter V set by 11 U.S.C. § 101(51D) as incorporated by 11 U.S.C. § 1182(1).

The debt arising from the Marion Guaranty is at least $3,844,145.60 based on the judgment

of foreclosure and sale entered in the underlying foreclosure action. *See* UST Mot. ¶ 30. The debt arising from the Goodwin Guaranty is at least $3,588,263.52 based on the judgment of foreclosure and sale entered in the underlying foreclosure action. *See id.* ¶ 32. The debt arising from the MHDN Guaranty is at least $997,500.00 based on the underlying consolidated promissory note. *See id.* ¶ 34. Thus, the debt arising just from the Guaranties is at least $8.4 million.

When the liabilities under the Guaranties are combined with (i) the undisputed secured claim in the amount of at least $1.5 million held by judgment creditor Jess Cohen, (ii) the secured claim in the amount of $687,526.38 held by NewRez, and (iii) Unsecured Claims in the amount of $318,982.57 — none of which were marked as contingent, unliquidated, or disputed — the Debtor has aggregate noncontingent liquidated secured and unsecured debt of at least $10.9 million, exceeding the limit of $3,424,000 set by 11 U.S.C. § 101(51D) as incorporated by 11 U.S.C. § 1182(1) for Subchapter V.

## CONCLUSION

Based on the foregoing, the Court holds that the Debtor has not carried his burden of proof to show by a preponderance of the evidence that he is entitled to proceed under Subchapter V. As a result, the Court grants the UST Motion and strikes the Debtor's Subchapter V election in the Petition. The Debtor's case will continue as a standard chapter 11 case in accordance with this Memorandum Decision and Order.

**SO ORDERED.**

**Dated: Central Islip, New York**
**November 5, 2026**

United States Bankruptcy Court Eastern District of New York

Sheryl P. Giugliano
United States Bankruptcy Judge